458

MARIA C. ROMEU *v.* COMMISSIONERS OF ST. JOSEPH COUNTY, JERRY J. MILLER, PRESIDENT COMMISSIONERS OF ST. JOSEPH COUNTY, RICHARD BONEWITZ, ATTORNEY FOR ST. JOSEPH COUNTY, BOARD OF AVIATION COMMISSIONERS OF ST. JOSEPH COUNTY, EDWARD V. MINCZESKI, ATTORNEY FOR BOARD OF AVIATION COMMISSIONERS OF ST. JOSEPH COUNTY.

[No. 3-772A37. Filed December 13, 1972. Rehearing denied March 22, 1973. Transfer denied August 8, 1973.]

*R. Wyatt Mick, Jr.*, Mishawaka, *Arthur W. Goulet,* of South Bend, for appellant.

*Edward V. Minczeski,* of South Bend, for appellees.

SHARP, J.—Maria C. Romeu alleges that she was injured on May 13, 1969 in the terminal facility operated by the Board

of Aviation Commissioners of St. Joseph County, Indiana as a result of the carelessness and negligence of the Aviation Commissioners of St. Joseph County, Indiana in the operation of their terminal facility.

On January 11, 1971 counsel for Plaintiff-Appellant duly posted the following letter:

"Board of Aviation Commissioners of
St. Joseph County
22965 U. S. #20
South Bend, Indiana 46628

Re: Maria Romeu
Accident of May 13, 1969

Gentlemen:

This letter is to advise you that I represent Maria C. Romeu in connection with an accident which she had at the St. Joseph County Airport on May 13, 1969.

Mrs. Romeu was a ticketed passenger awaiting a North-Central Airline flight numbered 806 on that date.

Mrs. Romeu fell on the slippery floor in the terminal just prior to leaving on the flight. Mrs. Romeu is looking to the St. Joseph County Airport Commissioners for damages for her injuries and I request that you inform your insurance carrier that I am representing her."

Between February 24, 1971 and March 23, 1971 an agent of the liability insurance carrier for the Board of Aviation Commissioners of St. Joseph County, Indiana entered into conferences and negotiations with counsel for the Plaintiff-Appellant in regard to said purported claim of Plaintiff-Appellant. The Chief Deputy Auditor of St. Joseph County, Indiana gave an affidavit, the essential parts of which are as follows:

"2. She recalls that prior to the filing of this action, one of the attorneys for the Plaintiff, namely R. Wyatt Mick, Jr., requested of her information concerning the presentation of a claim for the injuries set forth in the Complaint herein, and that she advised him that any claim against the Board of Aviation Commissioners of St. Joseph County should be directed to the Board of Aviation Commissioners of St. Joseph County, and not to the Commissioners of St. Joseph County.

3. She is familiar with the procedures for the presentation of claims and the payment of claims for the Board of Commissioners of St. Joseph County and for the Board of Aviation Commissioners of St. Joseph County, and knows of her own knowledge that all of the claims regarding the appropriations of the Board of Aviation Commissoners of St. Joseph County are approved by that Body and not by the Board of Commissioners of St. Joseph County."

This case was filed in the St. Joseph Superior Court on May 11, 1971 and alleged the carelessness and negligence of the Board of Aviation Commissioners of St. Joseph County, Indiana causing the injuries to the Plaintiff-Appellant which she alleges she sustained on May 13, 1969. Both the Commissioners of St. Joseph County and the Board of Aviation Commissioners of St. Joseph County were made parties defendant to the complaint filed in the trial court.

The Defendants-Appellees filed their motion for summary judgment asserting that "there is no issue as to the fact that the plaintiff did not file her claim with the Auditor of St. Joseph County, duly itemized and verified by the claimant or someone on her behalf and further that said claim was not denied by the Board of Commissioners of St. Joseph County, Indiana.

"That the filing of said claim is jurisdictional and the presentation of claims is controlled by Burns Indiana Annotated Statutes Section 26-820 and 26-820a.

"Based upon the foregoing this court has no jurisdiction to entertain the plaintiff's complaint."

The trial court sustained Defendants-Appellees' motion for summary judgment. A motion for a new trial was filed and overruled resulting in this appeal.

The statutory authority of the Board of Aviation Commissioners of St. Joseph County, Indiana is found in IC 1971, 19-6-1-1 through 19-6-1-22, Ind. Ann. Stat. §§ 14-412 through 14-433 (Burns 1964) which is designated as the Airport Act of 1945. A supplemental act which

is Acts 1951, ch. 304 is found in IC 1971, 19-6-6-2 through 19-6-6-11, Ind. Ann. Stat. §§ 14-435 through 14-444 (Burns 1964) deals specifically with the issuance of bonds by such Board of Aviation Commissioners. Section 14-413 provides for the initial creation of such Board of Aviation Commissioners. It is under this section that the Board of Aviation Commissioners of St. Joseph County, Indiana had its original statutory origins. The subsequent sections of the Airport Act of 1945 confer a wide range of general and specific powers in accord with the basic legislative purpose which was to promote the orderly development of local aviation facilities. A few specifics will suffice to illustrate the scope of powers conferred.

Section 14-416 in part provides:

"Such board shall have a suitable office provided for it by the proper authorities in such municipality, or, at the option of said board, at such airport, at the expense of the department of aviation, where its maps, plans, documents, records and accounts shall be kept, subject to public inspection at all reasonable times. On or before the first day of February of each year such board shall make a report to the chief executive officer of its proceedings with a full statement of its receipts and disbursements for the preceding year, and shall also report the acquisition of air navigation facilities and of other property which have come under the control of such board, improvements made, and general character of the work of such board and progress of aviation and air commerce under its control during the preceding year. Money received by the board shall forthwith be paid into the municipality treasury and credited to the department of aviation, and all expenditures relating to the property and business under the control of such department, except as otherwise provided, may be provided for by special levy of taxes under provision of section 7½ [§ 14-420], and shall be paid from the municipality treasury when ordered by said board as hereafter provided."

Section 14-417 in part provides:

"The board of aviation commissioners may adopt and use a seal. Such applications, assurances, contracts and other instruments as are necessary or proper in such board's

performance of it duties and the exercise of its powers hereunder may be executed in its name or in the name of the municipality, as the case may be, by the president or vice-president of such board and attested by its secretary or assistant secretary, Provided however that such board may by resolution prescribe any other form or method of execution.

That the said board of aviation commissioners shall have as a part of its powers, full and exclusive power on behalf of such municipality:

To acquire, establish, construct, improve, equip, maintain, control, lease and regulate municipal airports and landing fields and other air navigation facilities, for the use of airplanes and other aircraft, either within or without the jurisdictional limits of such municipality; and to erect, install, construct and maintain at such airports facilities for the servicing of aircraft and for the comfort and accommodation of air travelers and the public; and the council of any such municipality may by ordinance provide that any land suitable therefor that is now or may at any time hereafter be owned by such municipality shall be turned over to and put under the control of said board of aviation commissioners for such aviation and public purposes: . . .

* * *

To make all reasonable rules and regulations, not in conflict with the laws of the state or the ordinances, acts or resolutions of such political subdivision or the laws or regulations of the United States regulating air commerce, for the management and control of its airports and the landing fields, and other air navigation facilities and other property under its control; and the said board is authorized to require a special detail of police or to hire guards to execute the orders and enforce the rules and regulations made by the board of aviation commissioners.

* * *

To manage and operate any and all airports and landing fields and other air navigation facilities now or hereafter acquired or maintained by any such municipality; and to lease all or any part of any such airport or landing field and any buildings and other structures thereon and parts hereof and to fix, charge, and collect rentals therefor and for commercial privileges thereon, and to fix, charge and collect rentals, tolls, fees and charges to be paid for the use of the whole or any part or parts of any such airports or landing fields, and other air navigation facilities and for

aircraft landing thereon, and the servicing thereof; and to erect and construct such public recreational facilities as will not conflict or interfere with air operational facilities; and to fix, charge and collect fees for public admissions and privileges; and to make contracts for the operation and management of any such airports, landing fields and other operation of such air navigation facilities through lessees thereof or through its own employees or otherwise."

Section 14-419 in part provides:

"Such board of aviation commissioners may, in the name of the municipality, take any action which it deems proper, to recover damages for the breach of any agreement, express or implied relating to or growing out of the operation, control, leasing, management or improvement of the property under its control, and for the penalties for the violation of any ordinances or of any of its rules or regulations and for injury to the personal or real property under its control and to recover possession of any such property. All rules and regulations which said board shall at any time adopt under and in pursuance of the provisions herein contained shall be published for at least ten [10] days in a newspaper of general circulation printed in such municipality."

Sections 14-421 through 14-424 confers additional powers in regard to the sale of aviation land, air space, zoning, and condemnation and eminent domain.

A part of the legislative intent of this act can be determined from § 14-425 which provides:

"The acquiring, establishment, construction, improvement, equipment and maintenance and the control and operation of municipal airports and landing fields for aircraft under and pursuant to any of the provisions of this act [§§ 14-412—14-433] shall be deemed and are hereby declared to be a governmental function of general public necessity and benefit, and shall be for the use and general welfare of all the people of the state of Indiana, as well as of the people residing in any such municipality."

It is readily apparent from an examination of the various provisions of the Airport Act of 1945 that the legislature

intended to and did authorize the creation of a board of aviation commissioners with a broad range of governmental powers. Once created as an executive department of the municipality in question the Department of Aviation is to be under the control of the Board of Aviation Commissioners. In providing for such simple things as a suitable office and other powers it is clear that the basic responsibility for the operation of the department of aviation was vested by the legislature in the Board of Aviation Commissioners and not, in this case, the Board of County Commissioners which was its original creator. Although the Board of County Commissioners has certain specific powers with reference to the operation of the Department of Aviation, such as the levy of a tax, the Airport Act of 1945 envisions a semi-independent division of the county municipality with the basic powers of operation and control vested in the Board of Aviation Commissioners. Two small indices of this separate status are the provisions for a separate office and seal. Equally fundamental, is the important decision making and operational control placed in the hands of the Board of Aviation Commissioners. It is also revealing that the Board of Aviation Commissioners is granted specific power to operate airport facilities outside the jurisdictional limits of its own county. The discretion of the Board of Aviation Commissioners to deal independently of the Board of County Commissioners with reference to certain funds is revealed in § 14-430a which provides:

> "Whenever the board of aviation commissioners of any municipality accumulates funds which are derived from sources other than from the operation of the airport and which are not needed for the operation or maintenance of the airport, the board, upon a majority vote of its members, may without notice transfer all or any part of such funds to the general fund of the municipality: Provided that such funds were not derived from taxation. The provisions of this section shall not apply to any funds derived from lands leased from the federal government."

Once created under the Aviation Airport Act of 1945, the Board of Aviation Commissioners has authority to handle, process, pay or defend against claims or lawsuits for personal injuries or property damages based on negligence arising out of the operation of its facilities. The act in question authorizes the payment of such claims or judgments resulting from lawsuits based on such claims by the Board of Aviation Commissioners without any specific or official action by the Board of County Commissioners. In this case there is no reason to require the Plaintiff-Appellant to file her claim with the Board of County Commissioners of St. Joseph County, Indiana for the simple reason that it is not a claim upon which that Board of County Commissioners of St. Joseph County could act but is only a claim upon which the Board of Aviation Commissioners of St. Joseph County could act. To provide otherwise would be to fly in the face of the clear legislative intent of the Airport Act of 1945 and to permit the possible harassment of the Board of County Commissioners of St. Joseph County for claims which are entirely within the purview and authority of the Board of Aviation Commissioners of St. Joseph County. To require the Plaintiff-Appellant to file her claim before a body, i.e., the Board of County Commissioners of St. Joseph County, Indiana, which had no authority to act on it, is an idle formality and an unnecessary one.

The Appellees contend that in this case it was necessary for the Plaintiff-Appellant to file a formal verified claim with the Board of County Commissioners and also argued that the claim presented to the Board of Aviation Commissioners preliminary to the filing of the lawsuit in this case did not meet the requirements provided in IC 1971, 71-2-40-1, 17-2-1-1 and 17-2-38-3, Ind. Ann. Stat. §§ 26-804 through 26-806 (Burns 1970). As a threshhold matter this series of statutes refers to "any legal claim against any county . . ." We hold that the claim of the Appellant

here for personal injury damages was not such a claim against any county as contemplated in that series of statutes.

Section 14-419 in part provides as follows:

"Such board of aviation commissioners may, in the name of the municipality, take any action which it deems proper, to recover damages for the breach of any agreement, express or implied relating to or growing out of the operation, control, leasing, management or improvement of the property under its control . . .

The expenditures for the maintenance and operation of said airports or landing fields shall be limited to the extent of specific appropriations of money made in advance by the council upon estimates furnished. Purchases and expenditures shall be made by the said board and claims therefor shall be paid on allowance thereof by the board which shall act in the same manner as is provided for the allowance of other claims against said municipalities."

It is clear from an examination of § 14-419 that any suit brought by the Board of Aviation Commissioners is brought "in the name of the municipality". It is equally clear that such provision deals merely with the formality or the caption of a complaint or pleading. The basic power to decide whether or not said Board of Aviation Commissioners would bring any such lawsuit is vested in the Board of Aviation Commissioners and not in the Board of County Commissioners. It is equally apparent that in a proper case for personal injury damages arising out of the alleged negligence in the authorized activities of the Board of Aviation Commissioners that said Board of Aviation Commissioners can be sued by a direct action without designating the Board of County Commissioners as a party defendant. In fact, if such a claim or suit grew out of activities which were within the exclusive statutory powers of the Board of Aviation Commissioners, the Board of County Commissioners would not be a proper party defendant in such case since it has no direct legal responsibility for claims for damages arising out of the activities of said Board of Aviation Commissioners.

We do not read the last sentence above quoted from § 14-419 to carry into the Airport Act of 1945 in toto the provisions of §§ 26-804 through 26-806 as absolute conditions precedent to filing a lawsuit for personal injury damages arising from the alleged negligence of the Board of Aviation Commissioners in the operation of an authorized facility. We are not here required to reach and decide the question of what preliminaries and formalities are required as a condition precedent to the payment of a claim for personal injury damages arising from the authorized activities of a Board of Aviation Commissioners without the filing of a lawsuit.

In this case the Appellees appear to argue that if a proper claim were preliminarily filed with the Board of County Commissioners in accord with the provisions of §§ 26-804 through 26-806 it would be possible to file a lawsuit against said Board of County Commissioners upon the denial of such claim under the provisions of §§ 26-820 and 26-820(a). Thus, the Appellees seem to argue that if the appropriate conditions precedent have been met the Board of County Commissioners is the proper party defendant in suits for personal injury damages based on negligence arising from activities which are within the statutory authority of the Board of Aviation Commissioners. We doubt that the Board of County Commissioners of St. Joseph County, Indiana are inviting this court to render such a decision. We doubt whether the Board of County Commissioners of St. Joseph County, Indiana wants the opportunity to be liable for claims and lawsuits which arise from the authorized activities of the Board of Aviation Commissioners of St. Joseph County. We, therefore, categorically reject these contentions of the Appellees which would impose such liability on the Board of County Commissioners of St. Joseph County, Indiana. It is very clear that the claim here arose from an activity which is clearly and specifically authorized by statute to the Board of Aviation Commissoners.

In this case, as between the Board of County Commissioners of St. Joseph County and the Board of Aviation Commissioners of St. Joseph County the latter, rather than the former, would be liable to pay the damages if the Appellant can prove the necessary elements of a common law negligence case. The ordinary common law defenses may, of course, be raised against her claim. Under the facts of this case the Board of Commissioners of St. Joseph County would not be and could not be held liable for these alleged damages and is therefore not a proper party defendant.

The granting of the Defendants-Appellees' motion for summary judgment is hereby reversed and this case is remanded with instructions to dismiss this case as to all defendants except the Board of Aviation Commissioners of St. Joseph County and to proceed with a determination of the case on its merits as to said Board of Aviation Commissioners.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 290 N.E.2d 74.